Argued January 21; reversed March 22, 1932

# TATE *v.* EMERY ET AL.

(9 P. (2d) 136)

P. J. *Gallagher,* of Portland, for appellant.

E. M. *Page,* of Salem (Keyes & Page, of Salem, on the brief), for respondents.

RAND, J. This is a suit to enforce an oral agreement alleged to have been entered into by plaintiff's daughter, Luella Thompson, and Charles Thompson, her husband, agreeing that upon the death of one of them the other should hold for life whatever property they possessed and that the survivor would, upon his or her death, will one-half of the residue to the heirs of the other. These parties were married on January 12, 1898, and had no children. She died intestate on February 17, 1921, and at that time they owned property of the value of $20,000 or more, consisting of some $4,000 on deposit to their joint credit in the bank, the remainder being real property of which they were tenants by the entirety. He died without marrying again on November 4, 1928, and left an estate which, after the payment of all debts and expenses, amounted to approximately $12,000. He left a will devising all said property to his own heirs and excluded therefrom the heirs of his deceased wife.

Plaintiff is an unmarried woman, her former husbands having died, and she is the sole heir at law of

her deceased daughter. The evidence shows, in addition to the facts above stated, that at the time of her daughter's marriage the daughter was the owner in her own right of a small tract of land in Linn county of the value of about $3,000, and that at that time her husband possessed no property; that after their marriage they resided upon the wife's land and farmed the same; that subsequently they sold it and invested the money in other property which they also sold; that some three or four years before her death they removed to Wasco county and thereafter and until her death resided at The Dalles; that they were industrious and thrifty and had accumulated at the time of her death the property above described, which property he subsequently sold and, upon its sale, retained the proceeds thereof.

The defendants named in the complaint are the executor of the last will and testament of Charles Thompson, deceased, and the brothers and sister of the deceased testator, who are the legatees and devisees named in the will.

The relief sought in the suit is that the contract be specifically performed and that the defendants be decreed to hold one-half of the property which they have or will obtain under the will in trust for plaintiff.

■ The plaintiff testified that her daughter Luella died while undergoing a surgical operation and that on the evening before she was taken to the hospital her daughter stated to her that she and her husband agreed that, in case of her death, he was to have the use of all the property belonging to them during his life and to make a will dividing it upon his death in equal parts to the heirs of both. But since this conversation took place in the absence of the husband and

was not a declaration against interest, we think this testimony was properly excluded, it being purely hearsay and inadmissible.

Plaintiff, however, relies upon the testimony of E. E. Munsey, her brother, Samuel Hart, a nephew of plaintiff, and Marvin Tate, her son by her second marriage. Mr. Munsey testified that he had been a resident of Linn county, Oregon, for about forty years prior thereto, and that he went to The Dalles to attend the funeral of his niece, Luella Thompson, and that while at The Dalles and on the day following the funeral, he had a conversation with Charles Thompson, as follows: "He offered to take my nephew Sammy Hart and Charley Tate and myself out for a drive to the town of Dufur, some fifteen miles out there and on the way there he told us how much he thought of Luella and how he missed her and of their agreement, their partnership agreement. He said they had a partnership agreement on their property, that they owned it jointly, and that they had agreed in case she died first, he would have full possession of the property as long as he lived, and the use of it, but at his death, he was to make a will, willing to her mother, if she was living, what would be one-half of the property and if she wasn't living, to her nearest relatives. In case she outlived him, she was to do likewise, to will one-half the property to his parents if living, or his nearest relatives."

Plaintiff's nephew testified that he was a locomotive engineer, residing in Portland, and had been in the employ of the Southern Pacific Railway Company for about twenty-five years; that he was present at The Dalles at the time of the funeral and that, after the funeral, he had a conversation with Charles Thompson

and that Thompson told him that he and his deceased wife had "an agreement between them whichever one died first, was to retain the property and then at their death they was to make a will and it went equally to his heirs and to her mother, her heirs."

Marvin Tate, plaintiff's son, testified that he was thirty-two years of age, was a locomotive fireman employed by the Southern Pacific Railway Company, for which he had been working about thirteen years. His testimony is as follows: "The only time I talked to him was the day I left after the funeral, about three days, maybe two, we were in the yard then, Charley and I alone, and he told me about it. He said—he told me how much he thought of his wife, and how he missed her, and he also told me they had their business fixed and arranged so he was to have the use of it for his lifetime and after his lifetime it was to be willed to my mother and one-half to his people. Q. Did he say Luella was to make a will in case she survived him? A. Yes, he said if she outlived him she was to have the use of it her lifetime."

■■ The foregoing is the only testimony tending to prove the existence of the contract. It is contended that it is not sufficient to establish the contract and that this testimony comes from interested sources. It is true that this is the testimony of close relatives of the plaintiff, but this, in itself alone, is not sufficient to discredit their testimony. There was no attempt made to impeach these witnesses or either of them in any respect and there is nothing improbable or unreasonable in their testimony tending to discredit it. After a careful reading of the entire record and a study of all the testimony offered by the three witnesses referred to, we are satisfied that these witnesses

were endeavoring to tell the truth to the very best of their ability. The case, therefore, presents more a question of fact than of law.

■ Of course, a contract to devise property cannot be specifically enforced unless it was valid and enforceable. To be such all the elements of a valid contract must be shown to exist and it must be supported by a sufficient consideration. At the time Luella Thompson died, all the property was then owned jointly by them. Their money was deposited in a bank to their joint credit and subject to the check of either. The real property was held by them as an estate by the entirety. Upon her death, she dying intestate, the money would pass to him as her sole heir at law and the real property would vest in him by virtue of his right of survivorship.

■ The complaint alleges that the contract was made shortly after their marriage. This is very improbable under the facts proven. It is not at all probable that such a contract would be entered into by any husband and wife so long as they had an expectation or hope that they could have children, and it is not likely it would be entered into even then unless they realized that one or the other was in poor health and might die. Before going to The Dalles in 1914 or 1915, the evidence shows that they had taken title to all their property in the name of the wife, but when they went to The Dalles and acquired the property which they possessed at the time of her death, they took title thereto in their joint names. This is some evidence to show the existence of the contract and, at that time, they must have realized that they could have no children. Taking title as they did in the joint names of both was in aid of the contract since it would enable

the survivor, upon the death of the other, to come into the immediate possession, ownership and control of the property without any legal difficulty. If this contract was made at or shortly prior thereto, the taking of such title, instead of taking it as they had theretofore, would be a sufficient consideration to support the contract. These considerations, in view of the extra-judicial admissions made by Charles Thompson, are strong evidence, we think, to support the contract. These admissions were made immediately following the death of the wife and at a time when his love and affection for her, his sense of loss and the obligation of his promise would be keenly felt. He would also be more likely to acknowledge the existence of the contract at that time than several years thereafter when such feelings had long since ceased to exist.

Our statute provides that an express trust to real property cannot be created except by writing: Section 9-905, Oregon Code 1930. But it is provided by the next section that this rule can have no application to parol constructive trusts which arise by implication of law from the fraudulent acts of one procuring title to real property. It is well settled that where a party fraudulently acquires title to land, he will be declared a trustee ex maleficio and the trust will be enforced against him. In such a case a parol constructive trust arises by implication of law and it must necessarily be established by parol testimony: *Hornbeck v. Crawford,* 130 Or. 230 (279 P. 870), and *Sharkey v. The Burlingame Co.,* 131 Or. 185 (282 P. 546). See also *Rudd v. Gates,* 191 Ky. 456 (230 S. W. 906), where the court quoted with approval from *Becker v. Neurath,* 149 Ky. 421 (149 S. W. 857), as follows: "* * * It is true that the doctrine of constructive trusts rests upon the ground that the grantor has been induced to

part with his title by the fraud of the grantee, but it does not follow from this that it is necessary to show by fact or circumstance actual, intentional fraud practiced at the time by the grantee. When the grantee by act or word has induced the grantor to make the conveyance under an agreement or promise that certain parol conditions attached to it will be complied with, the law will imply a fraud from the failure of the grantee to perform the annexed conditions."

For these reasons, we think it was error for the circuit court to deny plaintiff the relief prayed for. The decree of the court below will, therefore, be reversed and a decree will be entered here granting to plaintiff the relief prayed for in the complaint.

BEAN, C. J., ROSSMAN and KELLY, JJ., concur.