Argued September 16; affirmed October 13; reheading denied
November 10, 1936

# COOKE ET AL. *v.* KING

(61 P. (2d) 429, 62 P. (2d) 20)

*McDannell Brown,* of Portland (George Arthur Brown, of Portland, on the brief),·for appellants.

*William L. Brewster,* of Portland, for respondent.

BAILEY, J. This suit was instituted by the plaintiffs, Pearl L. Cooke and Agnes Bradshaw, against Charles Willard King, both individually and as executor of the will of William Parker Olds, deceased, to have King declared to hold in trust the estate of that decedent for the purpose of paying therefrom the sum of $100 per month to each plaintiff during the remainder of her life.

The complaint alleges that September 2, 1911, William Parker Olds and Lillian Cooke Olds were husband and wife and had by their joint efforts accumulated a

substantial estate, and that the plaintiffs are the two surviving sisters of said Lillian Cooke Olds. Paragraph II of the complaint is as follows:

"That on or about the said 2d day of September, 1911, said William Parker Olds and Lillian Cooke Olds entered into an agreement wherein and whereby they were to execute a joint will leaving the entire estate of each of them to the survivor, and upon the death of such survivor, then to certain trustees, a copy of which joint will is attached hereto, marked 'Exhibit A,' and made a part hereof; that by the terms and provisions of said agreement, plaintiffs herein and each of them were to receive from said trustees the sum of One Hundred ($100.00) Dollars per month as long as they might live."

It is then averred that on April 20, 1914, Lillian Cooke Olds died, leaving no heirs except her mother, the plaintiffs and another sister, and that both the mother and the other sister have since died; that the joint will was duly admitted to probate as her last will and that all the estate of the said Lillian Cooke Olds was distributed to her surviving husband, William Parker Olds, "pusuant to said will and said agreement"; that later, on February 8, 1935, William Parker Olds died testate, "leaving said joint will as his last will and testament"; that said will was duly admitted to probate in Multnomah county, Oregon; that pursuant to said will and the order admitting the same the defendant Charles Willard King was duly and regularly appointed executor of said will; and that he qualified as such executor and ever since that time has been acting in that capacity.

Paragraph V of the complaint thus continues:

"That by reason of the said agreement and said last will and testament, the defendant, Charles King, is made devisee and legatee of the entire estate of William Parker Olds, in trust, among other purposes, for the

payment to plaintiffs and each of them of the sum of One Hundred Dollars per month as long as they may live, as provided in the agreement between said Lillian Cooke Olds and said William Parker Olds, but said defendant, contrary to said agreement and the provisions of said will, claims the entire estate of the decedent, William Parker Olds, for his own, absolutely and entirely, free from any trusts in favor of plaintiffs or at all; that plaintiff Pearl L. Cooke is 53 years of age, and plaintiff Agnes Bradshaw is 75 years of age, and the present value of said trust estate, based on the American mortality tables, is respectively $17,381.40 and $9,425.40.''

The prayer of the complaint is ''that the estate of decedent, William Parker Olds, be decreed and held to be in trust pursuant to the terms of the agreement entered into between William Parker Olds and Lillian Cooke Olds in their lifetime; that plaintiffs be held and decreed to be entitled, as beneficiaries of said trust, to the sum of One Hundred Dollars ($100.00) per month each as long as they shall live, or, in the alternative, that they have and recover of and from said trust estate the sum of $17,381.40 for and on account of plaintiff Pearl L. Cooke, and the sum of $9,425.40 for and on account of plaintiff Agnes Bradshaw, and for such other and further relief as to the court may seem equitable''.

The will, a copy of which is attached to the complaint as ''Exhibit A'', was executed by William Parker Olds and Lillian Cooke Olds, his wife, on September 2, 1911, and was mentioned by them in the document itself as ''our last joint and mutual will and testament''. The instrument stated that both testators were then 54 years of age. It revoked all former wills, provided for payment of the testators' debts, and continued as follows:

''Third: We and each of us hereby give, devise and bequeath to the one of us who shall survive the other,

all of the property owned by us, real, personal and mixed, wheresoever situate, including after-acquired property.

"Fourth: In the event that at the time of the death of the survivor of us Jay Cass Olds, brother of William Parker Olds, shall be alive, then and in that event the survivor does hereby give, devise and bequeath unto the said Jay Cass Olds all of the said survivor's property, real, personal and mixed, wheresoever situate, including after-acquired property.

"Fifth: In the event that the said Jay Cass Olds shall have died prior to the death of the survivor of us, then and in that event, if Charles Willard King, the half-brother of William Parker Olds, shall be alive, the said survivor does hereby give, devise and bequeath unto the said Charles Willard King all of the said survivor's property, real, personal and mixed, wheresoever situate, including after-acquired property.

"In disposing of our property as herein set out, we do so with the hope that the survivor or the said Jay Cass Olds or Charles Willard King, as the case may be, will so dispose of and handle our said properties, real, personal or mixed, as to carry out our personal intentions with relation thereto, which intentions are known to us, and each of us, and are known to the said Jay Cass Olds and Charles Willard King. It is not intended by this expression of our desire that our property shall eventually be disposed of according to our own wishes, to in any manner indicate that a trust is thereby or hereby created, or that there is any obligation upon the part of the said survivor, the said Jay Cass Olds or the said Charles Willard King, as the case may be, to carry out any such personal wishes or desire that we may have, but each of us having the utmost confidence in the other, and both of us having the utmost confidence in the integrity and ability of the said Jay Cass Olds and Charles Willard King, are confident that in so far as practicable our wishes in the disposition of our property will be carried out.

"Sixth: In the event that both said Jay Cass Olds and Charles Willard King shall have died prior to the

death of the survivor, then the said survivor does hereby give, devise and bequeath unto the said C. A. Bell, of Portland, Oregon, who is familiar with our properties and our wishes, all said survivor's property, real, personal and mixed, wheresoever situate, including after-acquired property, as trustee, however, to be handled and disposed of by said C. A. Bell according to certain instructions in writing this day delivered to said C. A. Bell, said instructions being hereby referred to and by reference made a part hereof.''

The seventh paragraph of the will provides that the survivor of the testators shall act as ''executor or executrix of our estate''. The following paragraphs provide that in the event that Jay Cass Olds is living at the time of the death of the survivor, he shall act as executor, but in case of his death before that of the survivor of the testators, then Charles Willard King, if alive, shall act as executor; and if both Jay Cass Olds and Charles Willard King should predecease the survivor, then C. A. Bell is designated as executor of the will.

A demurrer to the complaint was filed by the defendant King, on the ground that such pleading did not state facts sufficient to constitute a cause of suit against the said defendant either in his individual or his representative capacity. This demurrer was sustained by the circuit court, and upon the refusal of plaintiffs to plead further a decree was entered dismissing the suit. From that decree this appeal is prosecuted.

The appellants' position is succinctly stated in their brief as follows:

''The trust which plaintiffs rely on arises not from the will but from the contract between Mr. and Mrs. Olds. After it has been fully executed by one of the parties it is a valid and binding contract even though made in parol. Such a contract becomes valid and bind-

ing upon the survivor or his successors in interest after the death of one party and the acquisition of property under the agreement by the other.''

In support of this contention the appellants cite and rely upon the following Oregon cases: *In re Burke's Estate,* 66 Or. 252 (134 P. 11); *Stevens v. Myers,* 91 Or. 114 (177 P. 37, 2 A. L. R. 1155); *Schramm v. Burkhart,* 137 Or. 208 (2 P. (2d) 14); *Tate v. Emery,* 139 Or. 214 (9 P. (2d) 136); *Taylor v. Wait,* 140 Or. 680 (14 P. (2d) 283).

In the first of these cases William C. Burke and his wife executed mutual and reciprocal wills providing for the final disposition of their estate. After Mrs. Burke's death, Burke executed a new will in which he attempted to dispose of his property contrary to the provisions of the mutual wills. An attempt was made to prevent the probating of his later will, on the ground that the earlier will could not be revoked by the husband after the death of the wife. In determining this matter the court held that, ''While such former will is revoked as a will, it still stands as evidence of the contract.''

*Stevens v. Myers, Schramm v. Burkhart* and *Taylor v. Wait,* supra, all involved the execution by husband and wife of separate wills containing reciprocal provisions. In each case the wills provided for the final disposition of the properties of husband and wife upon the death of the survivor. The ultimate beneficiaries were clearly designated and the bequests or devises to them definitely indicated. In each instance the wife predeceased the husband and the latter attempted to make testamentary disposition of his estate in contravention of the terms of the mutual and reciprocal wills. It was held in each of said cases that parol evidence might be introduced as to the facts and circum-

stances surrounding the execution of the wills in determining whether or not there was a contract, as alleged, for making mutual and reciprocal wills. It was further held that, "where mutual wills are the result of a contract between the parties making them, which could not be rescinded without the consent of both, and one of them has died and his part of the contract has been carried into execution, equity will not permit the other to violate the agreement but will enforce the contract by declaring the executor, devisee or other person coming into possession of the property which was the subject of the contract to be trustee for those who would have been benefited had the contract been performed".

The facts in *Tate v. Emery,* supra, differ materially from those in the foregoing four cases. In that instance the plaintiff brought suit to enforce specific performance of an oral agreement alleged to have been entered into between her daughter, Luella Thompson, and the latter's husband, Charles Thompson. According to the facts stated in the opinion, Luella Thompson and her husband had entered into an agreement whereby "upon the death of one of them the other should hold for life whatever property they possessed and that the survivor would, upon his or her death, will one-half the residue to the heirs of the other". Luella Thompson died intestate, leaving her husband surviving. He subsequently attempted by will to devise to his own heirs all the property, both his own and that which he had inherited from his wife, to the exclusion of the heirs of his deceased wife. The suit was brought by the deceased wife's mother as her only heir, after the death of the husband, to enforce specific performance of the terms of the oral contract above referred to against the devisees named in the husband's will. Under the facts

as found by the court it was held that although the agreement between husband and wife was in parol, nevertheless there was sufficient evidence of consideration and performance thereof to sustain the contract between the husband and wife, and that the plaintiff was entitled to one-half the property attempted to be devised by the husband to his relatives.

It is the appellant's theory in the case at bar that the agreement between Mr. and Mrs. Olds to execute a joint will making final disposition of their entire estate was actually consummated by executing their joint will hereinabove referred to and quoted in part. There is no allegation that the survivor, William Parker Olds, ever attempted to make disposition of his own property or that received by him upon the death of his wife, contrary to the reciprocal provisions of that joint will. We are not here confronted with the questions which were before this court in the cases relied upon by the appellants, for in those instances, with the exception of *Emery v. Tate,* supra, which involved only an oral agreement as to the final disposition of the husband and wife's estate, the fact was that separate wills had been executed by the husband and wife, and the question arose whether or not those instruments were drawn under a contract to execute mutual wills. After determining that such a contract in each instance did exist, the court held that the provisions contained in the wills should be enforced.

The appellants assert that the expressions of the testators contained in the second subdivision of paragraph V of their will constituted King trustee of the property received by him upon the death of William Parker Olds, and were used to embody the agreement entered into by Mr. and Mrs. Olds prior to the execution of their will, as to the final disposition of their estate.

It is apparent that no trust was created by definite, explicit words in the will itself, and we assume from appellants' brief that they are relying upon the reference to the testators' wishes and desires, contained in that subdivision, as creating a trust of the kind sometimes referred to as "precatory" or "recommendatory".

In Bogert on Trusts and Trustees, § 48, page 224, it is stated:

"The basic principle in the construction of precatory expressions is well stated by a distinguished judge. 'The primary question in every case is the intention of the testator, and whether in the use of precatory words he meant merely to advise or influence the discretion of the devisee, or himself to control or direct the disposition intended.'

"The words 'request', 'desire', and the like, do not naturally import a legal obligation. But the early view in England was that such words, when used in a will, were to be given an unnatural meaning, and were to be held to be courteous and softened means of creating duties enforceable by the courts. According to that opinion words of request prima facie created a trust. But since the beginning of the nineteenth century the American courts have changed their stand upon this question, and now hold that the natural significance of precatory words is not a trust, but that such an obligation may be shown by other portions of the instrument or by extrinsic circumstances. The American courts have adopted this natural construction of precatory expressions."

The gist of the decision of Lord Langdale in the case of *Knight v. Knight,* 3 Beav. 148, wherein he clearly and accurately explained the doctrine underlying what is commonly termed a "precatory trust", is thus summarized in his own language therein:

"As a general rule, it has been laid down that when property is given absolutely to any person, and the

same person is, by the giver who has power to command, recommended, entreated, or wished to dispose of that property in favor of another, the recommendation, or entreaty, or wish shall be held to create a trust: 1. If the words are so used that, upon the whole, they ought to be construed as imperative; 2. If the subject of the recommendation or wish be certain; and 3. If the objects or persons intended to have the benefit of the recommendation or wish be also certain."

The Knight case has frequently been referred to and quoted with approval by the courts of this country, and in 3 Pom. Eq. Jur., (4th Ed.), section 1016, page 2260, the author, after stating that it is impossible to add anything to the essential elements therein presented, makes the following observation:

"Those essentials are the imperative nature and meaning of the precatory words, the certainty of the subject-matter or property embraced in the trust, and the certainty of the objects or intended beneficiaries. Upon the authority of the more modern decisions, the whole doctrine may be summed up in a single proposition: In order that a trust may arise from the use of precatory words, the court must be satisfied from the words themselves, taken in connection with all the other terms of the disposition, *that the testator's intention to create an express trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary manner.* Unless a gift to A, with precatory words in favor of B, is in fact *equivalent in its meaning, intention, and effect,* to a gift to A, 'in trust for B,' then certainly no trust should be inferred. The early decisions proceeded perhaps upon a more artificial rule, and saw an intention in the use of words of wish, desire and the like, where no such intention really existed. The modern decisions have adopted a more just and reasonable rule, and require the intention to exist as a fact, and to be expressed in unequivocal language."

In 1 Bogert on Trust and Trustees, § 48, page 226, we find:

"In the first place, a failure on the part of the settlor definitely to describe the subject-matter of the supposed trust or the beneficiaries or objects thereof is strong evidence that he intended no trust. Unless these elements, namely, subject and object, are definite, the trust will be unenforceable, even if it could come into being. A property owner will not be presumed to have disposed of his estate in an ineffectual and useless way."

■ The essential elements of a precatory, or, as the author terms it, "recommendatory", trust, are indicated as follows in 3 Story Eq. Jur., (14th Ed.), § 1446, page 106:

"Wherever therefore the objects of the supposed recommendatory trust are not certain or definite, wherever the property to which it is to attach is not certain or definite, wherever a clear discretion and choice to act or not to act is given, wherever the prior dispositions of the property import absolute and uncontrollable ownership,—in all such cases courts of equity will not create a trust from words of this character."

See also, in this connection, *In re Johnson's Estate,* 100 Or. 142 (196 P. 385, 1115), and the annotation in 49 A. L. R. at page 39, under heading, "Uncertainty as to subject-matter or object".

In the will under consideration the plaintiffs are not referred to by name, class, or in any other manner whatever, nor is there anything contained in that instrument from which it could be inferred how much of their estate the testators expected or wished or hoped that King would dispose of according to their desire.

■ There is little, if any, dissent from the proposition that precatory words in a will do not create a trust

where either by a consideration of all the provisions of the will or by the express words of the testator it appears that the recommendation was not intended to be obligatory upon the executor, devisee or legatee. In determining the intention of the testator in the instant case it is necessary, as in the construction of all wills, to consider the entire instrument. It has already been pointed out that these plaintiffs were not named or referred to in any manner in the will, nor was there any indication of how much, if anything, they were to receive.

The third paragraph of the joint will gives, devises and bequeaths to the surviving testator "all of the property owned by us, real, personal and mixed, wherever situate, including after-acquired property". The fourth paragraph and the first subdivision of the fifth contain identical language in relation to what is given to Jay Cass Olds or Charles Willard King, dependent upon which one of them survives the testators. There is no indication in either the first or second paragraph, or the first subdivision of the third, that the beneficiary named therein is to receive less than absolute ownership of the property devised or bequeathed, with this exception, that the surviving testator, by the terms of the joint and mutual will, did not have the right to dispose of the property otherwise than as specifically provided in that instrument. The second subdivision of the fifth paragraph, after mentioning the hope of the testators, expressly provides as follows: "It is not intended by this expression of our desire that our property shall eventually be disposed of according to our wishes, to in any manner indicate that a trust is thereby or hereby created, or that there is any obligation upon the part of the said survivor, the said Jay Cass Olds or the said Charles Williard King, as the case

634

may be, to carry out any such personal wishes or desire we may have.'' This is followed by a statement that the testators have the utmost confidence in each other and utmost confidence in the integrity and ability of Jay Cass Olds and Charles Williard King, and that they are confident that in so far as practicable their own wishes in regard to the disposition of their property will be carried out.

The sixth paragraph provides that in case both Jay Cass Olds and King predecease the surviving testator, all the testator's property, real, personal and mixed, shall go to C. A. Bell as trustee and that he shall manage and handle it according to written instructions which have been given to him by the testators, ''said instructions being hereby referred to and by reference made a part hereof''. This paragraph concerning the creation of a trust clearly indicates that the testators were familiar with some, at least, of the terms necessary to create an express trust.

■ The great weight of authority is to the effect that where the testator uses words disclaiming an intention to create a trust no trust will be implied from the inclusion of precatory or recommendatory language: *Burnes v. Burnes,* 137 Fed. 781; *Tabor v. Tabor,* 85 Wis. 313 (55 N. W. 702); *Bacon v. Ransom,* 139 Mass. 117 (29 N. E. 473); *Enders v. Tasco,* 89 Ky. 17 (11 S. W. 818); *Gross v. Smart,* 189 Ky. 338 (224 S. W. 871); *In re Kelemen's Will,* 126 N. Y. 73 (26 N. E. 968).

■ The disavowal of an intention to establish a trust in so far as gifts to Jay Cass Olds and Charles Willard King are concerned, the creation of an express trust in the event of the death of both Jay Cass Olds and King before that of the surviving testator, the failure of the testators to name the plaintiffs or in any man-

ner refer to them, the omission to designate the amounts to be received by them, and the definition of the words used according to their ordinary and accepted import, negative the conception that the testators intended to create, by the precatory expressions used in the will, a trust in favor of the plaintiffs.

■ Section 9-903, Oregon Code 1930, provides that:

"A last will and testament, except when made by a soldier, in actual military service, or by a mariner at sea, is invalid, unless it be in writing, and executed with such formalities as are required by law. Evidence, therefore, of such will shall not be received, other than the written instrument itself, or secondary evidence of its contents, in the cases prescribed by law."

In the case at bar an effort is made by the plaintiffs to establish a will other than and different from that executed by the testators. They are attempting to have read into the will a trust providing an annuity payable to each of them during the remainder of their lives. It is true, they allege that an agreement was entered into between the testators prior to the drawing of this will, to create such a trust. But they further aver that the will as executed was the instrument which the testators had agreed between themselves to execute. Any understanding which the testators might have had looking to the creation of such a trust could have been altered or annulled by them at any time, and if there was any definite agreement between them as to establishing a trust fund for these plaintiffs it was abrogated prior to or upon the execution of the will involved in this suit.

It is not intended to intimate by what is here said that evidence of the circumstances and conditions attendant upon the execution of a will may not be introduced, or that the relationship of the testator to the beneficiaries therein named may not be resorted to in a

proper case, to aid in construction of a will. That, however, is not the case here presented. If we were to hold that the complaint herein stated a cause of suit, we should in effect be making a new will for the testators.

The circuit court committed no error in sustaining the demurrer to the complaint, and the decree appealed from is affirmed.

RAND, ROSSMAN and BELT, JJ., concur.

KELLY, J. (dissenting). Omitting the title of the cause, plaintiffs' complaint is as follows:

"Come now the plaintiffs, and for cause of suit against the defendant, as Executor of the Estate of William Parker Olds, deceased, and individually, alleges:

## I.

"That for many years prior to September 2d, 1911, William Parker Olds and Lillian Cooke Olds were husband and wife, and as such they had accumulated by their joint efforts and together a substantial estate; that plaintiffs herein are the two surviving sisters of said Lillian Cooke Olds.

## II.

"That on or about the said 2d day of September, 1911, said William Parker Olds and Lillian Cooke Olds entered into an agreement wherein and whereby they were to execute a joint will leaving the entire estate of each of them to the survivor, and upon the death of such survivor, then to certain trustees, a copy of which joint will is attached hereto, marked 'Exhibit A,' and made a part hereof; that by the terms and provisions of said agreement, plaintiffs herein and each of them were to receive from said trustees the sum of One Hundred ($100.00) Dollars per month as long as they might live.

## III.

"That on or about the 20th day of April, 1914, said Lillian Cooke Olds died, leaving no heirs except plaintiffs and another sister and mother, both of whom are since deceased; that said joint will was duly admitted to probate in Multnomah County, Oregon, and all of the estate of said Lillian Cooke Olds was distributed to the surviving spouse, William Parker Olds, pursuant to said will and said agreement.

## IV.

"That on or about the 8th day of February, 1935, said William Parker Olds died, testate, leaving said joint will as his last will and testament, which said will was duly admitted to probate in the Probate Department of the Circuit Court of Multnomah County, Oregon, on the 15th day of February, 1935; that pursuant to said order admitting will to probate, the defendant, Charles King, was duly and regularly appointed Executor of said estate; that he properly qualified as such Executor, and ever since said date has been acting in that capacity.

## V.

"That by reason of the said agreement and said last will and testament, the defendant, Charles King, is made devisee and legatee of the entire estate of said William Parker Olds, in trust, among other purposes, for the payment to plaintiffs and each of them of the sum of One Hundred Dollars per month as long as they may live, as provided in the agreement between said Lillian Cooke Olds and said William Parker Olds, but said defendant, contrary to said agreement and the provisions of said will, claims the entire estate of the decedent, William Parker Olds, for his own, absolutely and entirely, free from any trusts in favor of plaintiffs or at all; that plaintiff Pearl L. Cooke is 53 years of age, and plaintiff Agnes Bradshaw is 75 years of age, and the present value of said trust estate, based on the American mortality tables, is respectively $17,381.40 and $9,425.40.

## VI.

"That by reason of the facts herein stated, plaintiffs are entitled to a decree establishing their rights or claims as beneficiaries in or to the estate of William Parker Olds, deceased, in accordance with the terms of the agreement entered into by said William Parker Olds and Lillian Cooke Olds, and the joint last will and testament executed by them; that plaintiffs have no plain, adequate or speedy remedy at law.

"Wherefore, plaintiffs pray that the estate of decedent, William Parker Olds, be decreed and held to be in trust pursuant to the terms of the agreement entered into between William Parker Olds and Lillian Cooke Olds in their lifetime; that plaintiffs be held and decreed to be entitled, as beneficiaries of said trust, to the sum of One Hundred Dollars ($100.00) per month each so long as they shall live, or, in the alternative, that they have and recover of and from said trust estate the sum of $17,381.40 for and on account of plaintiff Pearl L. Cooke, and the sum of $9,425.40 for and on account of plaintiff Agnes Bradshaw, and for such other and further relief as to the Court may seem equitable."

The joint will referred to in said will as "Exhibit A" and made a part of said complaint is as follows:

"Know All Men By These Presents, That we, William Parker Olds, a resident of Portland, Multnomah County, Oregon, of the age of fifty-four (54) years, and Lillian Cooke Olds, wife of said William Parker Olds, also of the age of fifty-four (54) years, being both of sound disposing mind and memory, do make, this, our last joint and mutual will and testament, in manner following, to-wit:

"First: We hereby revoke any and all former will or wills made by us, or either of us, it being our particular intention at this time to revoke and rescind that certain joint and mutual will heretofore made by us on or about the tenth day of August, 1910, which said will was made in contemplation of an extended trip

taken by us at that time, and which said will has been lost and cannot be found for the purpose of destruction.

"Second: We and each of us desire that at the time of our deaths all our outstanding debts be first paid, including the expenses of our last illness, our funeral expenses and the expense of the administration of our respective estate. And for the purpose of paying such indebtedness, we, and each of us, desire that our executor or executrix, as the case may be, shall have full power to pay such indebtedness out of the first funds coming into the estate, whether the same be funds from the sale of the personal property, funds from the sale of real property, or income. And in the that event it be necessary to sell property for the payment of such indebtedness, it is our wish that our executor or executrix, as the case may be, shall have full power to choose such property as in the judgment of said executor or executrix, as the case may be, may seem best for the purpose of such sale, whether the same be personal or real.

"Third. We and each of us hereby give, devise and bequeath to the one of us who shall survive the other, all of the property owned by us, real, personal and mixed, wheresoever situate, including after-acquired property.

"Fourth. In the event that at the time of the death of the survivor of us Jay Cass Olds, brother of William Parker Olds, shall be alive, then and in that event the survivor does hereby give, devise and bequeath unto the said Jay Cass Olds all of the said survivor's property, real, personal and mixed, wheresoever situate, including after-acquired property.

"Fifth. In the event that the said Jay Cass Olds shall have died prior to the death of the survivor of us, then and in that event, if Charles Willard King, the half-brother of William Parker Olds, shall be alive, the said survivor does hereby give, devise and bequeath unto the said Charles Willard King all of the said survivor's property, real, personal and mixed, wheresoever situate, including after acquired property.

"In disposing of our property as herein set out, we do so with the hope that the survivor or the said Jay

Cass Olds or Charles Willard King, as the case may be, will so dispose of and handle our said properties, real, personal or mixed, as to carry out our personal intentions with relation thereto, which intentions are known to us, and each of us, and are known to the said Jay Cass Olds and Charles Willard King. It is not intended by this expression of our desire that our property shall eventually be disposed of according to our own wishes, to in any manner indicate that a trust is thereby or hereby created, or that there is any obligation upon the part of the said survivor, the said Jay Cass Olds or the said Charles Willard King, as the case may be, to carry out any such personal wishes or desire that we may have, but each of us having the utmost confidence in the other, and both of us having the utmost confidence in the integrity and ability of the said Jay Cass Olds and Charles Willard King, are confident that insofar as practicable our wishes in the disposition of our property will be carried out.

"Sixth. In the event that both said Jay Cass Olds and Charles Willard King shall have died prior to the death of the survivor, then the said survivor does hereby give, devise and bequeath unto C. A. Bell, of Portland, Oregon, who is familiar with our properties and our wishes, all said survivor's property, real, personal and mixed, wheresoever situate, including after-acquired property, as Trustee, however, to be handled and disposed of by said C. A. Bell according to certain instructions in writing this day delivered to said C. A. Bell, said instructions being hereby referred to and by reference made a part hereof.

"Seventh. We and each of us do hereby make, constitute and appoint the one of us who shall survive the other the Executor or Executrix of our estate, to act as such without bonds.

"Eighth. In the event that at the time of the death of the survivor of us Jay Cass Olds shall be alive, then and in that event the survivor of us does hereby make, constitute and appoint the said Jay Cass Olds the executor of the estate of said survivor, to act as such without bonds.

"Ninth. In the event that said Jay Cass Olds shall have died prior to the death of the survivor of us, then and in that event, if Charles Willard King shall be alive the survivor does hereby make, constitute and appoint said Charles Willard King the executor of the estate of said survivor, to act as such without bonds.

"Tenth. In the event that the said Jay Cass Olds and Charles Willard King shall have died prior to the death of the survivor of us, then and in that event the survivor of us does hereby make, constitute and appoint C. A. Bell the executor of the estate of said survivor, to act as such without bonds.

"In Witness Whereof, We have hereunto set our hands and seals this second day of September, 1911.

"William Parker Olds (Seal)<br>
Lillian Cooke Olds (Seal)"

While it was urged by plaintiffs that this is a suit for the specific performance of the contract alleged to have been made by decedents, Olds, prior to the execution of their joint will, the writer thinks that such contract has either been performed by said decedents in the making and execution of said joint will or that it was thereby modified or rescinded. In either event it is not subject to specific performance.

The complaint, however, by its terms, seeks a decree of the court impressing a trust pursuant to the terms of said contract *and* said will. As the writer construes this complaint, it charges that the language employed in the second paragraph of the fifth clause of said joint will refers to the contract alleged to have been entered into by decedents prior to the execution of said joint will. In so far as said language in said will is pertinent to this phase of the case, it is as follows:

"In disposing of our property as herein set out, we do so with the hope that * * * Charles Willard King, * * * will so dispose of and handle our said

property, real, personal or mixed, as to carry out our personal intentions with relation thereto, which intentions are known to us, and each of us, and are known to the said * * * Charles Willard King. It is not intended by this expression of our desire that our property shall eventually be disposed of according to our own wishes, to in any manner indicate that a trust is thereby or hereby created, or that there is any obligation upon the part of the said * * * Charles Willard King *. * * to carry out any such personal wishes or desire that we may have, but each of us having the utmost confidence in the integrity and ability of the said * * * Charles Willard King, are confident that insofar as practicable our wishes in the disposition of our property will be carried out.''

Thus construing it, the writer thinks that prima facie the complaint alleges facts showing the creation of a trust by the terms of which payment should be made to each of them of the sum of $100 per month during their respective lives.

It will be noted that the sixth clause of said will provides for the gift, devise and bequest unto one C. A. Bell of all the survivor's property, real, personal and mixed to be handled and disposed of by C. A. Bell as trustee according to certain instructions in writing which instructions are referred to and by reference made a part of said joint will. This clause of said will to become effective in case of the death of both J. Cass Olds and Charles Willard King prior to the death of the survivors of said decedents.

In the case of *Wemme v. First Church of Christ, Etc.*, 110 Or. 179 (219 P. 618, 223 P. 250), Mr. Justice RAND declares the law pertaining to precatory trusts as follows:

''In order to raise a precatory trust, it is necessary that there be a gift of property to one person for the

benefit of another. Precatory words are words of recommendation, entreaty or the like, accompanying a gift and implying a desire or wish on the part of the donor that the property given should be used for the benefit of some designated person or be applied to some designated purpose. Precatory words are not imperative in form as that would result in a contradiction in terms. They are words of recommendation, entreaty or wish, and it is sufficient to make them imperative if it appears that they were intended to create an obligation.

"The doctrine of precatory trusts was announced by Lord Langdale in *Knight v. Knight,* 3 Beav. 148, in these words:

" 'As a general rule, it has been laid down that when property is given absolutely to any person, and the same person is, by the giver who has power to command, recommended, or entreated, or wished to dispose of that property in favor of another, the recommendation, or entreaty, or wish shall be held to create a trust: 1. If the words are so used that, upon the whole, they ought to be construed as imperative; 2. If the subject of the recommendation or wish be certain; 3. If the objects or persons intended to have the benefit of the recommendation or wish be also certain.' "

In the case at bar, the writer thinks the words referring to the wishes of the decedents in reference to the disposition of the property to the survivors are so used that upon the whole they ought to be construed as imperative. The writer is of the opinion that the trustee is in no position to claim the right to the entire estate for himself and for himself alone in view of the language employed in this clause of said will. The writer also believes that by taking the allegations of the complaint to be true, as we must when testing it by demurrer, the subject of the recommendation contained in said clause of said joint will is certain and that the persons intended to have the benefit of said recommendation or wish are also certain.

The writer is not unmindful that there are cases holding that no trust will be implied from the use of precatory words where the testator expressly declares that such is not his intention. Cases of this character are cited in note 62 at page 36 of the annotation upon the subject, Precatory Trusts, in Volume 49, A. L. R., beginning at page 10, as follows: *In re Purcell's Estate,* 167 Cal. 176 (138 P. 704); *Enders v. Tasco,* 89 Ky. 17 (11 S. W. 818); *Gross v. Smart,* 189 Ky. 338 (224 S. W. 871); *Bacon v. Ransom,* 139 Mass. 117 (29 N. E. 473); *George v. George,* 186 Mass. 75 (71 N. E. 85); *In re Keleman,* 126 N. Y. 73 (26 N. E. 968); *Wood v. Seward,* 4 Redf. (N. Y.) 271; *Re Haven's Estate,* 6 Dem. (N. Y.) 456, 2 N. Y. S. 639; *Fellowes v. Durfey,* 163 N. C. 305 (79 S. E. 621); *Tabor v. Tabor,* 85 Wis. 313 (55 N. W. 702); *McCormick v. Grogan,* L. R. 4 H. L. Eng. 82, 17 Weekly Reporter 961.

These cases are distinguishable from the case at bar. Most of them are determined only from the language of the will alone without reference to any extrinsic facts. Those wherein extrinsic evidence is considered differ in reference to the facts so considered very materially from the instant case.

The contrary doctrine is announced in the two cases cited in note 61 of said annotation. These cases are *Bohon v. Barrett,* 79 Ky. 378, and *Bouknight v. Brown,* 16 S. C. 155.

In the instant case, the joint will was executed on September 2, 1911. On April 20, 1914, Lillian Cooke Olds died, and this will was admitted to probate. It is obvious that defendant herein must have been aware of the terms and provisions of said will for a period of more than 20 years prior to the death of William Parker Olds, which occurred on February 8, 1935.

Assuming that the facts are as stated in the complaint, silence on the part of defendant for 20 years concerning the course he proposed to pursue with reference to the wishes of decedents as set forth in said will indicates his assent thereto and a willingness and intention to carry out such wishes.

If, on the other hand, at any time during that period, defendant had given notice to the surviving testator that defendant would disregard and decline to conform to the decedents' wishes, as expressed in said joint will, such surviving testator, in equity and fairness to his dead wife, should have revoked defendant's appointment under the will and substituted an executor, who would confrom thereto. Moreover, if the surviving testator had modified said joint will by a subsequent will or by a codicil to the effect that defendant should not carry out the wishes expressed in said clause of said joint will, such action on said surviving testator's part would have been a breach of the contract alleged in plaintiffs' complaint. The refusal on the part of the defendant, as executor, to conform to the wishes of the decedents is in effect no less a breach of the terms of said contract as extended by and incorporated in said joint will.

The complaint alleges that decedents accumulated a substantial estate. This dissipates the conclusion which otherwise might be drawn that the amount thereof is too small to render the payment of said annuities practicable. Upon oral argument, it was stated that the appraised value of the estate is approximately $400,000, and this statement was not controverted.

If, as contended by plaintiffs, decedents intended that plaintiffs, who are the surviving sisters of Mrs. Olds, should receive annuities as claimed, and by refer-

ence to their wishes in said will indicated a desire that defendant should pay the same, the writer thinks that defendant, who is a surviving half-brother of Mr. Olds, ought not to deprive plaintiffs of such annuities by retaining the entire estate for himself.

If the facts are otherwise than as reflected in plaintiffs' complaint, the trial court would be governed by them.

Holding these views, the writer believes that the order sustaining the demurrer of defendant to plaintiffs' complaint and the order and decree of dismissal were erroneous; and for that reason he dissents.

CAMPBELL, C. J., and BEAN, J., concur in dissent.

---

Petition for rehearing denied November 10, 1936

ON PETITION FOR REHEARING

(62 P. (2d) 20)

BAILEY, J. The appellants, plaintiffs in the circuit court, have presented a petition for rehearing, in which it is asserted that the statement in the majority opinion reading as follows: "It is the appellants' theory in the case at bar that the agreement between Mr. and Mrs. Olds to execute a joint will making final disposition of their entire estate was actually consummated by executing their joint will hereinabove referred to and quoted in part", is erroneous and "is diametrically opposed to the position expressly taken by appellants".

■ What was attempted to be said, and we thought we expressed it clearly enough, particularly as elucidated by the remainder of the opinion, was that the agreement between Mr. and Mrs. Olds to make a joint

will had actually been carried out by the execution of the joint will of which a copy is attached to the complaint as an exhibit. This is in accordance with the second paragraph of the complaint, as we understand the allegations therein contained. We did not mean by the expression above quoted, to which appellants take exception, to intimate that it was the appellants' theory that the alleged agreement between Mr. and Mrs. Olds to provide an annuity payable at the rate of $100 a month to the appellants had actually been consummated by the execution of this will.

There is involved in this case the fact that Mr. and Mrs. Olds agreed to make a joint will. Such a will was actually made. It is not contended that there was any mutual mistake in the drafting or execution of the will. It was executed subsequent to the alleged agreement between the testators to provide for the appellants. No attempt was made in this suit to set aside the will or to have it declared void because of fraud practiced by one testator upon the other or fraud exerted upon either or both of the testators by a third party. There is no allegation that Mr. Olds agreed to dispose of the joint property in any other manner or to other beneficiaries than provided by the will.

We do not have here any question of an agreement to execute a will based upon a valid consideration in favor of another party and failure to carry out the agreement so to do. Nor is there shown, as we pointed out in the original opinion, an attempt by one of the testators executing a mutual will or a joint will to dispose of his property contrary to the reciprocal provisions of such will or wills.

Reverting now to paragraph II of the complaint, which is quoted in the original opinion, we find that

it is therein alleged that on or about September 2, 1911, Mr. and Mrs. Olds "entered into an agreement wherein and whereby they were to execute a joint will leaving the entire estate of each of them to the survivor, and upon the death of such survivor, then to certain trustees, a copy of which joint will is attached hereto, marked 'Exhibit A' and made a part hereof". We assume from this allegation that the copy which is attached to the complaint is that of the joint will which Mr. and Mrs. Olds agreed to execute. No other conclusion can be reached from the language used. However, according to the appellants' own statement, "The trust which the plaintiffs rely upon arises not from the will but from the contract between Mr. and Mrs. Olds". The appellants overlook the fact that such an agreement between Mr. and Mrs. Olds, because there was no consideration to support it when made, except their mutual promises, could be annulled or rescinded by the execution of a joint will providing for other disposition of their properties.

In the prior opinion we attempted to point out that the Oregon cases therein cited relative to the making of mutual wills decided that oral testimony might be introduced to show that separate and distinct wills executed by husband and wife were executed under an agreement between them to make mutual wills providing for the final disposition of their joint properties, which would attribute to such wills the quality of irrevocability. In none of those cases, or any other case which has been cited to or found by us, did the court hold that where husband and wife made mutual wills or a joint will specifying the final disposition of their joint property parol testimony could be introduced to vary the terms of such will or wills so as to make a

different disposition of the property from that provided by the testators, except where fraud, mutual mistake or misrepresentation was alleged.

We have considered the following authorities cited for the first time by the appellants in their petition for rehearing, and do not find that they are in any way contrary to the conclusion reached in the original opinion herein: *Pfeiffer v. Kemper,* 244 Ill. App. 474 (154 N. E. 476); *Everdell v. Hill,* 68 N. Y. S. 719 (58 App. Div. 151); *Meador v. Manlove,* 97 Kans. 706 (156 P. 731); *Wanger v. Marr,* 257 Mo. 482 (165 S. W. 1027); *Allen v. Ross,* 199 Wis. 162 (225 N. W. 831, 64 A. L. R. 180); *Morgan v. Sanborn,* 225 N. Y. 454 (122 N. E. 696).

The petition for rehearing is denied.

———

KELLY, J. In my opinion further discussion of this case would be ineffectual and hence I concur in the result of the foregoing opinion.