Argued April 20, affirmed as modified May 11, 1960

# THE UNITED STATES NATIONAL BANK OF PORTLAND *v.* KRAUTWASHL and HERRING ET AL

351 P. 2d 947

*Sam F. Speerstra,* Salem, argued the cause for appellant. On the brief were Rhoten, Rhoten & Speerstra, Salem.

*Herbert Swift,* Newberg, argued the cause for respondent. On the brief was Loyd W. Crow, McMinnville.

*Elliott B. Cummins,* McMinnville, argued the cause for defendants-respondents. On the brief were Cummins & Devlin, McMinnville.

Before McALLISTER, Chief Justice, and ROSSMAN, GOODWIN and HARRIS, Justices.

GOODWIN, J.

Defendant Norene Krautwashl appeals from a declaratory judgment rendered in the Circuit Court for Yamhill County, establishing a trust. Plaintiff bank sought a judicial construction of a will pursuant to ORS 28.010 to 28.160. The defendants-respondents are satisfied with the result reached in the declaratory judgment; they will be referred to as residuary legatees.

The will in question was made by Henry W. Herring, who named the bank as alternate executor. The testator inserted as Paragraph V:

> "To my friend and housekeeper, Norene Krautwashl, I bequeath the sum of $75.00 per month, beginning one (1) month after my death and continuing throughout her lifetime, and also the exclusive right to live in and use throughout her life-

time my home and its contents, and any automobile I may leave at my death. The above bequest, and the whole thereof, shall cease and become void if Norene Krautwashl shall marry, fail to occupy said home as her regular place of residence or cease to keep said automobile in her possession as long as the same may be in a usable condition. Should the bequest above made to Norene Krautwashl lapse, become void or forfeited, the gift therein made shall become a part of the residue of my estate. I direct that the following items of expense for the upkeep of said home, while it is occupied by the said Norene Krautwashl, shall be paid out of my estate, to-wit: taxes, repairs and fire insurance."

Having thus paved the way for this litigation, Mr. Herring died a short time later possessed of an estate inventoried at $114,274.58.

Mrs. Krautwashl was 52 at the time of the circuit court proceeding. The youngest of the residuary legatees was nearly 50, and the older of them were in the seventies.

The bank, seeking to carry out the terms of the provision for Mrs. Krautwashl and at the same time to distribute something to the other heirs during their lifetimes, asked the court to declare a trust. The court did so, and established a fund of $35,000 based on testimony given at the hearing. The record shows that the trial judge carefully considered all the factors involved and that his decision to provide a corpus of $35,000 was sound, insofar as the amount is concerned.

The appeal correctly challenges the nomenclature used in the declaratory judgment, in that the will did not create a trust. The balance of this appeal, however, with no disrespect to any person, is hard to distinguish from the attitude of the dog in Aesop's ancient manger.

The appellant not only seeks to have the declaratory

judgment set aside, but contends that the entire estate must be frozen in probate, subject to a charge of $75.00 per month, plus minor annual expenses, for the balance of her life, and only thereafter shall any residuary legatees receive distribution. We agree with the able and experienced trial judge who rejected this contention.

■ We will first dispose of the trust question. A trust requires a settlor, a trustee, a beneficiary, and a definite property. See 3 Page, Wills, 486, § 1176. The quoted will named no trustee and designated no trust property. Half of the trust is missing. While there are cases holding that a trustee can be appointed, to save an otherwise valid trust, we find no cases holding that both the trustee and the corpus of the trust can be supplied when the settlor failed to manifest his intent. See Restatement, Trusts, §§ 2, 76; *Cooke v. King,* 154 Or 621, 630, 61 P2d 429, 62 P2d 20, 107 ALR 881.

■ The Herring will created an annuity payable monthly. The will did not require that the annuity be paid out of income. It is thus presumed that it is to be paid from principal whenever necessary to augment income. 3 Page, Wills, 477, § 1172, collects cases which define annuities and distinguish them from gifts of income or other testamentary dispositions.

The Supreme Court of Pennsylvania, operating under a statute somewhat more specific than ours, approved an Orphans Court distribution of a net estate of $32,831.44 under a will similar to the one before this court as follows: $12,831.44 to remain in the hands of the executor to insure compliance with the testamentary directions, and $20,000 to be distributed among the residuary heirs. The court observed that should it develop later that the retained fund exceeded the requirements of the will, the excess could likewise

be distributed to the heirs on application. *Yeisley Estate,* 358 Pa 200, 56 A2d 205 (1948).

A somewhat similar situation is found in *Merrill v. Wooster,* 99 Me 460, 59 A 596 (1905). The testator gave his daughter $100 a year for life. The remainder of the estate was to be divided equally between other heirs. The executors on their own motion created a "trust fund" of $3,200. Later the daughter died without having exhausted the amount set aside. A question arose whether the testator had created a trust, in which case the unexpended portion would pass to those who were heirs as of the date of the expiration of the trust. If there was no trust, then the date of the testator's death would fix the rights of the parties. The court said:

> "Whatever confusion has arisen as to the construction of this will seems to be due to the attempt made to treat this fund of $3200 as a trust fund distinct from the residue of the estate. There is no trust created by this clause of the will. An annuity of $100 is given to Ada C. Wooster for life; and, as this annuity is payable out of the residuary estate, it was proper for the executors as such to set apart a sum sufficient to provide for the annuity. [Citing cases.]" 99 Me at 461.

ORS 117.350, which specifically provides for partial distribution on application by legatees, had not yet taken effect in its present form when the will became operative in this case. Mr. Herring died about a month before the effective date of the 1957 amendment. The date of death, however is immaterial. The law was in effect at all times after probate was commenced and controls procedural matters. Distribution is procedural. But even under the prior law, executors were permitted to make partial distribution to carry out the

manifest intent of the decedent so long as this could be done without prejudice to any prior right. 2 Jaureguy & Love, Oregon Probate Law and Practice (1958), 273, § 795. *Stewart v. Baxter,* 145 Or 460, 28 P2d 642, 91 ALR 818, quotes with approval from 24 CJ 473, § 1282:

> "It is a well-settled general rule, which is established by statute in some jurisdictions, that an executor or administrator may be allowed or ordered to make a partial distribution before final settlement of his accounts or the expiration of the statutory period, where it can be made without prejudice to the rights of creditors and other persons interested, * * * [sic]." 145 Or at 466.

The declaratory judgment should be modified to delete the references to a trust, and the executor should be instructed to carry out the terms of the circuit court order as executor rather than as trustee. The rights of all parties will be protected by the terms of the declaratory judgment, and the only loss to the estate will be a possible decrease in income from the loss of flexibility in managing the fund. This, the testator could have foreseen and avoided by careful draftsmanship.

The attorneys' fees and disbursements for all parties should be paid by the estate in an amount to be allowed by the trial court. The attorneys who argued this case had no connection with the drawing of the will.

Affirmed as modified, with costs to be paid by the estate.